J-A19038-25

2025 PA Super 196

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AUSTIN LOUIS KLINE | : | No. 229 WDA 2025 |

Appeal from the Order Entered February 19, 2025
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0000724-2023

BEFORE: BOWES, J., STABILE, J., and BENDER, P.J.E.

OPINION BY BOWES, J.:                    **FILED: September 5, 2025**

The Commonwealth appeals from the order granting in part and denying in part Austin Louis Kline's ("Appellee") motion *in limine* to exclude introduction of gruesome photographs of the victim at trial. We vacate and remand for further proceedings.

We offer the following summary of the Commonwealth's allegations of fact to support its charges against Appellee. At approximately 11:25 p.m. on May 25, 2023, the victim's son reported to the Pennsylvania State Police ("PSP") that his father had been missing for approximately seven hours. The victim was last seen before he had traveled to Appellee's property to complete an excavation job that they had arranged through Facebook. Officers proceeded to Appellee's residence for an interview, and he consented to a search of the property. PSP Trooper Donald Neisner noticed during his

interactions with Appellee that he had a recent injury to his left hand, which could have been consistent with a physical altercation. A K9 unit also alerted in several areas on his property. When the K9 handler approached the detached garage, he observed staining on the threshold of the door consistent with human blood. The police ceased the search, secured the area, and obtained a warrant the following day.

Upon execution, police discovered the victim's severely mangled body lying on the floor of the garage. He had been shot multiple times, both arms had been amputated from his shoulders, the right side of his head was smashed into the ground, and his neck was lacerated. Also located in the garage were trash bags containing the victim's severed arms. In an adjacent debris pile, police found a landscape tamper covered in human blood and hair. Officers located the firearm purportedly used to shoot the victim in Appellee's living room.

Based on the aforementioned events, Appellee was arrested and charged with one count each of first-degree homicide, aggravated assault, and abuse of a corpse, and five counts of tampering with or fabricating physical evidence. The matter was scheduled for trial and proceeded to jury selection. Appellee then filed the instant motion *in limine* to exclude twenty of the photographs of the victim taken at the scene of the crime and the autopsy.

During the hearing on Appellee's motion, the Commonwealth explained that it needed imagery of each of the victim's injuries to solidify the sequence

of events and to prove that Appellee had the specific intent to kill. More precisely, it informed the court that Appellee admitted to murdering the victim during a police interview, which the Commonwealth intended to introduce at trial. Appellee stated that he shot the victim, hit him in the head with a shovel, and shot him again. While the victim was on the ground, he attempted to stand, so Appellee shot him once more. Appellee then heard the victim gurgling and proceeded to smash his head with a landscape tamper.

The Commonwealth explained to the court that since Appellee had confessed to killing the victim, it anticipated a self-defense claim, noting that there were also several "inconsistent statements [by Appellee] in this" case. *See* N.T. Motion *in Limine*, 2/18/25, at 10. Thus, it believed photographs of all the victim's injuries were relevant to prove first-degree homicide and abuse of a corpse, as well as to disprove self-defense. The Commonwealth also planned to present PSP troopers and a pathologist to describe the extent and nature of the victim's injuries, utilizing the images for assistance. The pathologist would further be able to testify, from visual evidence, as to when and how the victim died, and whether certain wounds were pre- or post-mortem.

After taking Appellee's motion under advisement, the court issued an order excluding fourteen of the images, several of which depicted, *inter alia*, graphic detail of the victim's smashed head, skull fragments, brain matter, slashing to the neck, splattered flesh and copious amounts of blood on the

garage floor, bruising to the body, shoulder sockets after amputation, and the insides of the severed arms. However, the court admitted the following six photographs in color, unless otherwise noted, subject to relevancy: P4 and P8, depicting the bruising and wounds to the victim's amputated arms; P11, showing one side of the victim's torso as he lay on the garage floor with his head in the background, but cropped at the shoulders to omit his head and neck; P13, of a gunshot wound to the victim's buttocks; P17, in grayscale, illustrating the victim's back while lying face down on the autopsy table, with his face turned away from the camera; and P20, depicting the victim's torso while lying face up on the autopsy table, but cropped at the shoulders to omit his head and neck.

The Commonwealth timely appealed and simultaneously filed a concise statement in accordance with Pa.R.A.P. 1925.[1] The court issued a responsive Rule 1925(a) opinion. The Commonwealth now presents the following issue for our determination: "Did the lower court commit an abuse of discretion where it eliminated any and all photographic evidence of the massive, traumatic head wound of the victim in this case, thereby unfairly prejudicing

---

[1] "In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d). In its notice of appeal, the Commonwealth stated that the court's order substantially handicapped its prosecution of Appellee. **_See_** Notice of Appeal, 2/20/25.

- 4 -

the Commonwealth's ability to disprove self-defense and to affirmatively prove first-degree homicide?"  Commonwealth's brief at 7 (footnote omitted).

We begin with a survey of the applicable law.  This Court reviews "a trial court's admission of gruesome photographs . . . for an abuse of discretion." ***Commonwealth v. Walter***, 119 A.3d 255, 227 (Pa. 2015).

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

***Commonwealth v. Bainey***, 332 A.3d 66, 72 (Pa.Super. 2025) (cleaned up).

In determining whether to admit a photograph of a homicide victim, the court must engage in the following two-part inquiry:

> First, the trial court must examine whether the particular photograph is inflammatory.  If the photograph is not inflammatory, it may be admitted if it is relevant and can serve to assist the jury in understanding the facts of the case.  If the photograph is inflammatory, the trial court must determine whether the photograph is of such essential evidentiary value that its need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

***Commonwealth v. Woodard***, 129 A.3d 480, 494 (Pa. 2015).  A trial court may abuse its discretion where it "improperly weighed the probative value of evidence admitted against its potential for prejudicing the defendant." ***Commonwealth v. Antidormi***, 84 A.3d 736, 750 (Pa.Super. 2014) (cleaned up).

The trial court first concluded, and we agree, that the photographs of the victim are inflammatory.  All depict the shocking and intense wounds that

the Commonwealth contends that Appellee admitted to inflicting upon the victim. Accordingly, the court was bound to determine whether the probative value of the pictures outweighed the likelihood of prejudicing the jury. We review the trial court's analysis of this question with the following precepts in mind.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401. Evidence is excluded if its probative value is outweighed by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. This Court has explained that "all relevant Commonwealth evidence is meant to prejudice a defendant[,]" thus "exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Gonzalez*, 112 A.3d 1232, 1238 n.6 (Pa.Super. 2015) (cleaned up).

Where photographic evidence of a murder depicts gruesome imagery, "a trial court must not merely exclude [it] based on those qualities[.]" *Commonwealth v. Lyons*, 79 A.3d 1053, 1069 (Pa. 2013). Our High Court has explained:

> While recognizing that photographs of a homicide victim can be unpleasant, disturbing, and brutal, . . . there is no need to so overextend an attempt to sanitize the evidence of the condition of the body as to deprive the Commonwealth of opportunities of

proof in support of the onerous burden of proof beyond a reasonable doubt.

*Commonwealth v. Watkins*, 108 A.3d 692, 724 (Pa. 2014) (cleaned up).  If a trial court were to exclude photos based only upon their disturbing nature, it "would result in exclusion of all photographs of the homicide victim, and would defeat one of the essential functions of a criminal trial, inquiry into the intent of the actor."  *Commonwealth v. Walter*, 119 A.3d 255, 286 (Pa. 2015) (cleaned up).

Further, even where non-photographic evidence can describe the nature and extent of a victim's injuries, our High Court has held that "the availability of alternate testimonial evidence does not preclude the admission of allegedly inflammatory evidence."  *Commonwealth v. Ballard*, 80 A.3d 380, 393 (Pa. 2013) (cleaned up).  This is because "the condition of the victim's body provides evidence of the assailant's intent, . . . even where the body's condition can be described through testimony from a medical examiner[.]"  *Commonwealth v. Wright*, 961 A.2d 119, 138 (Pa. 2008).

A trial court may also take precautionary measures to decrease the likelihood that an inflammatory photo would prejudice jurors, including issuing curative instructions, editing the colors to black and white, and prohibiting the photographs from entering deliberations. *See Commonwealth v. Johnson*, 42 A.3d 1017, 1034 (Pa. 2012); *Commonwealth v. Ballard*, 80 A.3d 380, 393-94 (Pa. 2013).  Our High Court has also highlighted that "[i]t is a fundamental precept of our criminal jurisprudence that the Commonwealth is

entitled to prove its case by relevant evidence of its choosing." ***Commonwealth v. Hicks***, 91 A.3d 47, 55 (Pa. 2014).

Appellee has been charged with, *inter alia*, first-degree homicide and abuse of a corpse. To prove that Appellee committed murder in the first degree, the Commonwealth must demonstrate beyond a reasonable doubt that he intentionally killed the victim. ***See*** 18 Pa.C.S. § 2502. "A jury may infer the specific intent to kill based upon the defendant's use of a deadly weapon on a vital part of the victim's body." ***Commonwealth v. Anderson***, 323 A.3d 744, 753 (Pa. 2024). To prove that Appellee abused the victim's corpse, the Commonwealth must demonstrate that he "treat[ed] a corpse in such a way that he kn[ew] would outrage ordinary family sensibilities[.]" 18 Pa.C.S. § 5510. The Commonwealth also anticipates that Appellee may claim self-defense. If so, it must prove beyond a reasonable doubt that he "did not reasonably believe it was necessary to kill in order to protect himself . . . against death or serious bodily harm, or that [he] used more force than was necessary to save himself . . . from death[ or] great bodily harm[.]" ***Commonwealth v. Kennedy***, 332 A.3d 133, 141 (Pa.Super. 2025) (cleaned up).

Considering the aforementioned principles, we turn to the trial court's analysis of the second prong of the inflammatory-photograph test. With respect to the images that the court excluded or ordered to be cropped at the shoulders to obscure the victim's head and neck from view, although it found

that the pictures were "relevant and probative[,]" and "certainly provide[d] evidentiary value to the Commonwealth in proving first-degree homicide and abuse of a corpse and disproving self-defense[,]" it nevertheless determined that "the Commonwealth has a multitude of other evidence in addition to the admitted photographs to establish the elements" of the crimes. **See** Trial Court Opinion, 3/25/25, at 10. This evidence, the court explained, included police reports, interview statements from Appellee, and testimony from PSP troopers and a pathologist. **Id**. at 8-9. The court also proposed that the Commonwealth illustrate the victim's head wounds through drawings, diagrams, skeletal models, and collected evidence, such as the landscape tamper from the crime scene, which was covered in blood and hair. **Id**. at 9.

The court believed that the admitted photographs, none of which clearly depicted the injuries to the victim's head or neck, still "demonstrate the multitude and severity of the injuries suffered[.]" **Id**. While acknowledging that the Commonwealth has an "onerous burden of proof of establishing" Appellee's guilt, the trial court did not believe that the excluded or cropped photographs were of "such necessity and of such essential evidentiary value" to the Commonwealth to prove its case based upon its ability to describe the injuries to the victim's skull and neck through other means. **Id**. at 9-10. The court ultimately held that "[c]onsidering the disturbing and gruesome nature of the photographs displaying the [v]ictim's smashed head, . . . the

photographs would likely detract, confuse, and prejudice the jury in such a way that [Appellee] would not be given a fair trial." *Id*. at 9.

At the outset, the Commonwealth concedes that all imagery in this matter is inflammatory. *See* Commonwealth's brief at 12. However, it argues that "the complete banning of any and all pictures of the victim's head, as he was discovered at the crime scene, amounts to an error of law that is manifestly unreasonable." *Id*. The Commonwealth explains that it "does not believe this . . . Court should specify precisely what evidence should be received and how it is presented to the jury, only reverse the complete ban [of imagery of the damage to the victim's head] imposed [by the trial court] with appropriate instructions." *Id*. at 10.

The Commonwealth contends that there are several ways that the trial court could sanitize repugnant images of the victim's head to balance the potential prejudice to Appellee with its need to meet its high burden, including limiting the time that the photos are on display, presenting them in black and white format, and issuing a curative instruction. *Id*. at 12-13, 22. It asserts that a picture of the victim's head injuries would be relevant to prove first-degree homicide and rebut a self-defense claim in that the severity of the wounds would demonstrate a specific intent to kill. *Id*. at 18. Further, it emphasizes that the mere fact that non-photographic evidence could describe the damage does not negate the relevance of the images. *Id*. at 23.

In sum, the Commonwealth requests the following relief:

> [T]he Commonwealth seeks an order . . . remanding the matter with instructions so that the [trial] court permits the Commonwealth to present evidence that show[s] specific intent and contradicts any potential defense arguments of self-defense. The photos of the head wound are the best and clearest evidence of [Appellee's] intent and go to the very heart of the matter to be decided in the pending jury trial. Removing all photographic evidence of the head wounds[,] without caveat or qualification, represents a clear abuse of discretion.
>
> . . . .
>
> [T]he [trial] court's order should be . . . remanded with the instruction that the Commonwealth be permitted to admit the photos in question in some form.

*Id*. at 24-25.

Upon review, we conclude that the trial court erred by failing to adequately consider the Commonwealth's right to utilize all potentially relevant evidence to prosecute Appellee. The court misapplied the law in determining that images of the victim's head wounds were inadmissible based upon: (1) the ability to describe the injuries through other means; and (2) their appalling nature. Our law is clear that the fact that injuries could potentially be described through other evidentiary means is not a basis for exclusion. *See*, *e.g., Ballard*, 80 A.3d at 393. Further, the brutality of an image cannot be the sole basis for its exclusion because it would render any and all photographic evidence of a homicide inadmissible. *See*, *e.g., Watkins*, 108 A.3d at 724.

Although Appellee admitted to shooting and beating the victim, the Commonwealth must still prove, beyond a reasonable doubt, that Appellee

- 11 -

had the specific intent to kill him. *See* 18 Pa.C.S. § 2502. The trial court only admitted photos of the gunshot wounds and damage to the victim's torso, back, buttocks, and arms. What is missing, however, is imagery of the inflicted injuries to the victim's face and neck. Even considering Appellee's confession, it remains unclear when the victim died, or which wounds killed him. This is the precise reason the Commonwealth would introduce photographic evidence of the mutilation to the victim's skull and neck to allow witnesses, such as a pathologist, to explain which injuries occurred pre- or post-mortem and caused his death. The court failed to address whether omitting all photos of the victim's face and neck would substantially handicap the prosecution in this manner. Rather, the court insisted that the Commonwealth demonstrate the victim's head wounds through other means, which goes against the well-settled precept that the Commonwealth has the right to prosecute its case with relevant evidence as it deems fit. *See Hicks*, 91 A.3d at 55.

In fact, caselaw demonstrates that ghastly images of a homicide victim's wounds have been found to be: (1) necessary for witnesses to adequately describe the nature and extent of damage to a victim's body, (2) highly probative of a specific intent to kill, and (3) relevant to disprove defenses. *See*, *e.g.*, *Commonwealth v. Haney*, 131 A.3d 24, 38 (Pa. 2015) (holding that disturbing images of a four-year-old child's deadly injuries were necessary to depict the severity of the defendant's attack, rebut his assertion

- 12 -

that the child's bruises "were caused by accidental falls," and "to prove that [the defendant] beat [the child] with the necessary *mens rea*" for first-degree homicide); **Commonwealth v. Funk**, 29 A.3d 28, 33 (Pa.Super. 2011) (stating that "[s]pecific intent to kill can be established through circumstantial evidence such as the use of a deadly weapon upon a vital part of the victim's body[,]" and "[m]any assertions that Funk made about how the murder occurred were disproved by expert testimony using the pictures" based upon "the violence depicted").

Moreover, the court did not discuss whether altering a photograph of the victim's face and neck without obscuring it could decrease the likelihood of inflaming the jury's emotions. The court admitted one photograph that included the victim's head, P17, which was edited to black and white. That image, however, mainly depicts the victim's back while he was lying face down on the autopsy table, and his head is turned away from the camera. Although his skull appears to be disformed, the injuries to his face and neck are substantially shielded from the jury. The court neglected to consider whether an admitted photograph such as P20, which portrayed the victim's head and neck wounds face up on the autopsy table, could be shown to the jury with the same sanitizing efforts as P17. It failed to explain why it ordered P20 to be cropped at the shoulders, and neglected to consider whether editing it to grayscale to mute some of the gore would adequately balance the Commonwealth's right to utilize all relevant evidence to meet its onerous

burden without prejudicing Appellee. *See Antidormi*, 84 A.3d at 750. Furthermore, the court failed to weigh the prejudicial impact of such photos if it were to issue cautionary instructions, limit the time the jurors may view the photographs, or refuse to provide images during deliberations. *See Johnson*, 42 A.3d at 1034.

The violence of the acts allegedly committed by Appellee does not render photographic evidence of such actions inadmissible. *See Walter*, 119 A.3d at 286; *Lyons*, 79 A.3d at 1069. To overly sanitize the evidence in this case by prohibiting the jury from analyzing the traumatic wounds to the victim's face and neck would deprive the Commonwealth of highly probative evidence and potentially reward Appellee for inflicting such brutal injuries. *See Watkins*, 108 A.3d at 724.

Overall, the trial court abused its discretion when it misapplied the law in conducting the two-part balancing test outlined above. Specifically, it did not adequately weigh the Commonwealth's right to prosecute its case to the fullest extent, utilizing all relevant evidence, against the potential prejudice against Appellee. Accordingly, we vacate the order insofar as the court excluded all imagery of the victim's head and neck injuries, and remand with instructions for the trial court to admit some photograph evidence illustrating the wounds to the victim's head and neck. Since the Commonwealth was vague in its request for relief and did not demand that a certain image be admitted, we will defer to the court and the parties on that matter. However,

we note that P20 is an example of a photo that clearly depicts the damage to the victim's head and neck, and could be admitted with special consideration of censoring efforts, such as editing to grayscale, issuing jury instructions, and prohibiting the image from entering into deliberations.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 09/05/2025